IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RAASHIDA A.S. EL-SCARI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-00179-CV-RK |
| ) | |
| COMPREHENSIVE MENTAL HEALTH ) | |
| SERVICES, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Before the Court is Defendants' motion to dismiss Plaintiff's pro se Amended Complaint. (Doc. 28.) For the reasons below, the motion is **GRANTED in part** and **DENIED in part**. Specifically, the motion is **DENIED** as to Plaintiff's Title VII claim against Comprehensive Mental Health Services ("Comprehensive"), but Plaintiff's retaliation claims, her state law claims, and her claims against Julie Pratt and Antonia Wyatt are **DISMISSED**.

**Background**[1]

Plaintiff alleges race discrimination claims against Comprehensive, who was her employer, and two of Comprehensive's employees (Julie Pratt and Antonia Wyatt). Plaintiff worked directly with Comprehensive's clients as a mental health specialist. One of the clients received services from both Comprehensive and a domestic violence shelter, which had previously allowed Plaintiff to enter its facility. On July 18, 2018, however, Plaintiff was abruptly denied access to the shelter and was asked to leave. Plaintiff tried to sort out the misunderstanding by attempting to contact the shelter's executive director, but she wasn't able to make contact. The police were called. Plaintiff left voluntarily.

The shelter reported this to Comprehensive, which placed Plaintiff on administrative leave the next day and then fired her the day after that. Plaintiff was later denied unemployment benefits.

---

[1] The Court assumes the allegations in the Amended Complaint (Doc. 27) are true and draws additional facts from documents that are referenced in the Amended Complaint and attached to Plaintiff's prior filings (Doc. 6 at 11-15; Doc. 17-1), as well as public filings in Plaintiff's bankruptcy case, *In re El-Scari*, No. 16-10202 (Bankr. D. Kan.). These documents are "embraced by the complaint" and may be considered in ruling on a motion to dismiss. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

She alleges that she was treated this way because she is black and points to the fact that a white employee with the same job description and similar prior complaints was allowed to continue working.

At the time Plaintiff was fired on July 20, 2018, she had a pending Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Kansas. She immediately told her bankruptcy lawyer about the fact that she was fired and her potential discrimination claims. However, the lawyer did not file an amended Chapter 13 schedule to disclose these claims as potential assets. Rather, on October 2, 2018, Plaintiff filed a notice of voluntary conversion to a Chapter 7 bankruptcy, which the bankruptcy court sustained the next day. Plaintiff eventually received a Chapter 7 bankruptcy discharge, with no assets distributed to unsecured creditors.

Plaintiff filed a charge of discrimination against Comprehensive with the Equal Opportunity Employment Commission ("EEOC"). The charge was also dually filed as a complaint with the Missouri Commission on Human Rights ("MCHR"). (Doc. 17-1.) On the EEOC charge form, Plaintiff checked boxes for "retaliation" and "color" discrimination, but she did not check the box for "race" discrimination. (Doc. 6 at 12.) On February 22, 2019, following an investigation, the EEOC sent Plaintiff a letter notifying her that the case was dismissed and that she had a right to sue in court. (Doc. 6 at 11.) On February 28, 2019, the MCHR also sent Plaintiff a "Notice of Termination of Proceedings" stating as follows: "Based on a review of EEOC's investigation summary, the MCHR has decided to adopt the EEOC's findings and terminate its proceedings in this case." (Doc. 17-1.) The February 28, 2019 letter also stated that Plaintiff had a right to appeal the MCHR's decision to the Circuit Court of Cole County, Missouri, but the notice did not mention any right to file a discrimination lawsuit. (*Id.*)

Plaintiff then filed the present lawsuit in this Court, alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Missouri Human Rights Act ("MHRA"). After this Court granted Defendants' request for a more definite statement on the retaliation claim (Doc. 24), Plaintiff filed an Amended Complaint (Doc. 27). Defendants' motion to dismiss the Amended Complaint is now fully briefed and ready for decision. (Doc. 28; Doc. 29; Doc. 30; Doc. 31.)

**Subject-Matter Jurisdiction**

The Court has federal question jurisdiction over the Title VII claims and supplemental jurisdiction over the MHRA claims, which derive from the same "nucleus of operative fact" as the

Title VII claims. 28 U.S.C. §§ 1331, 1367; *Clark v. Iowa State Univ.*, 643 F.3d 643, 645 (8th Cir. 2011).

## Legal Standard

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quotation marks and citation omitted). Although the Court liberally construes pro se pleadings, a complaint "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The Court will not "supply additional facts" or "construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Id.* (quotation marks and citation omitted).

## Discussion

Defendants argue that the case should be dismissed for five reasons: (1) the claims against Comprehensive's employees are barred by statutory bans on individual liability; (2) all of Plaintiff's claims are barred by judicial estoppel because she failed to disclose them in bankruptcy; (3) the Amended Complaint fails to state claims for retaliation; (4) Plaintiff never received a right-to-sue letter from the MCHR; and (5) Plaintiff failed to exhaust her administrative remedies because she alleged discrimination based on "color" instead of "race" at the administrative level.

### I. Individual Liability Claims

Plaintiff agrees in her suggestions in opposition that the two individual employee defendants should be dismissed. (Doc. 30 at 7.) Accordingly, the claims against Julie Pratt and Antonia Wyatt will be dismissed.

### II. Judicial Estoppel

The Court declines to invoke judicial estoppel to bar Plaintiff's claims. "[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quotation marks and citation omitted). The doctrine "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Van Horn v. Martin*, 812 F.3d 1180, 1182 (8th Cir. 2016) (quotation marks

and citations omitted). In determining whether judicial estoppel applies, the Court looks to the three factors set out in *New Hampshire*: "(1) whether a party's later position is clearly inconsistent with its previous position; (2) whether the party succeeded in persuading the first court to accept its position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage [or impose an unfair detriment on the opposing party] if not estopped." *Id.* (quotation marks and citation omitted); *New Hampshire*, 532 U.S. at 750-51.

Here, the first *New Hampshire* factor weighs in favor of judicial estoppel, but the other two factors weigh against it. With respect to the first factor, Plaintiff took clearly inconsistent positions by failing to amend her Chapter 13 bankruptcy schedules to include her potential claims and then pursuing them in this Court. *See Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1033 (8th Cir. 2016) ("Jones' failure to amend his [Chapter 13] bankruptcy schedules to include his discrimination claims represented to the bankruptcy court that no such claims existed, and his assertion of those claims in this case is inconsistent with that prior position.") (quotation marks and citation omitted).

The second *New Hampshire* factor weighs against judicial estoppel. Plaintiff did not "persuade" the first court to accept her position. Before the bankruptcy court granted a discharge, Plaintiff converted from a Chapter 13 bankruptcy to a Chapter 7 bankruptcy. Generally, a debtor is required to amend Chapter 13 bankruptcy schedules to include potential lawsuits because "a Chapter 13 estate includes not only the property the debtor had at the time of filing, but also wages and property acquired after filing but before discharge." *Combs v. The Cordish Companies, Inc.*, 862 F.3d 671, 679 (8th Cir. 2017). In contrast, "a Chapter 7 estate does not include the assets a debtor acquires after the bankruptcy filing." *Id.* (cleaned up). For this reason, this case is less like the other cases cited by Comprehensive (*Van Horn*, *Jones*, and *CRST*) and more like *Combs*, which found no judicial estoppel because the claims at issue arose after a Chapter 7 bankruptcy petition was filed. *Id.* at 678-80; *Van Horn*, 812 F.3d at 1182-83 (judicial estoppel applied because the plaintiff failed to disclose claims in prior Chapter 13 bankruptcy); *Jones*, 811 F.3d at 1032-34 (same); *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 677-80 (8th Cir. 2012) (same and also for failure to disclose claims that accrued *before* a Chapter 7 bankruptcy was filed).

Unlike all of the cases cited, however, this case involved a conversion from Chapter 13 to Chapter 7. Comprehensive did not brief the effect of the conversion on the assets of the bankruptcy estate. Section 348 of the Bankruptcy Code governs the effect of converting from Chapter 13 to

Chapter 7. It states that "property of the estate in the converted case shall consist of property of the estate, *as of the date of filing of the petition*, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A) (emphasis added); *id.* § 101(42) ("The term 'petition' means petition filed . . . *commencing a case under this title*.") (emphasis added). Assets acquired post-petition are only included in the estate of a case converted from Chapter 13 under § 348 as a penalty for converting in bad faith. *Id.* § 348(f)(2).

Here, the alleged discrimination occurred after Plaintiff filed her original bankruptcy petition. As a result, her potential claims would not have been included in the converted Chapter 7 bankruptcy estate even if she had disclosed them to the bankruptcy court unless she converted in bad faith. Comprehensive does not argue that Plaintiff converted in bad faith or that Plaintiff's creditors or the bankruptcy trustee would have had a valid claim that she converted in bad faith. Plaintiff alleges that the reason she converted from a Chapter 13 to a Chapter 7 was because she lost her job and could not keep up with the payments required by the Chapter 13 plan, and Comprehensive does not contest this. Accordingly, Comprehensive has not persuaded the Court that Plaintiff's failure to disclose her potential claims had any effect on the bankruptcy court's discharge order.

The third *New Hampshire* factor also weighs against judicial estoppel for essentially the same reason. Unfair detriment is not at issue; Comprehensive does not claim Plaintiff's failure to disclose her claims in bankruptcy imposed an unfair detriment on Comprehensive. Plaintiff also did not receive an unfair advantage because, even if she had disclosed the potential claims, Comprehensive has failed to show how they would have been included in the Chapter 7 bankruptcy estate or otherwise affected the bankruptcy court's discharge order. Therefore, the Court declines to invoke judicial estoppel to bar Plaintiff's claims.

### III. Retaliation Claims

Comprehensive argues that the Amended Complaint fails to state retaliation claims because it does not allege that Plaintiff complained about discrimination or engaged in any other protected activity. The Court agrees.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016) (quotation marks and

citation omitted). To establish a claim for retaliation under the MHRA, the plaintiff must prove "(1) that she complained of discrimination; (2) that the employer took adverse action against her; and (3) that the complaint and the adverse action are causally related." *Kerr v. Curators of the Univ. of Missouri*, 512 S.W.3d 798, 814 (Mo. App. 2016).

In response to this Court's order requiring Plaintiff to file an Amended Complaint containing a more definite statement about her retaliation claim, she added allegations that she was denied unemployment benefits. While this might be considered an "adverse employment action" (the second element of the claim), it is insufficient to show that she complained about discrimination or engaged in any other statutorily protected activity (the first element of the claim). Plaintiff suggests she was discriminated against by the domestic violence shelter and by Comprehensive, but she does not allege she complained about discrimination and was fired as a result. Therefore, the Amended Complaint fails to state claims for retaliation.

## IV. Failure to Obtain a Right-to-Sue Letter from the MCHR

Comprehensive argues that her MHRA claims are barred because the MCHR did not issue her a right to sue letter. The Court agrees.

"[A] right-to-sue letter [i]s a condition precedent, although not a jurisdictional prerequisite, to bringing an action under the MHRA." *Whitmore v. O'Connor Mgmt., Inc.*, 156 F.3d 796, 800 (8th Cir. 1998). "A right-to-sue letter from the EEOC does not give rise to a right-to-sue under the MHRA; the plaintiff must first receive a right-to-sue letter from the MCHR." *Hammond v. Mun. Corr. Inst.*, 117 S.W.3d 130, 136 (Mo. App. 2003). Title VII and the MHRA are coextensive but not identical; they "create different causes of action." *Id.* According to Mo. Rev. Stat. § 213.111.1, the MCHR is authorized to issue a right-to-sue letter only if it does not complete its administrative processing within 180 days. In contrast, Mo. Rev. Stat. § 213.085.3 provides that final decisions of the MCHR may be appealed to the Circuit Court of Cole County, Missouri.

Here, the Amended Complaint alleges that "MHRA documentation . . . will clearly indicate that they have sided with EEOC regarding investigation results and conclusions, which have resulted in a Rights to Sue Letter." (Doc. 27 at 5.) However, Plaintiff has not pled that she received a right-to-sue letter from the MCHR, and she has not attached one to any of her filings—only a right-to-sue letter from the EEOC and a February 28, 2019 "Notice of Termination of Proceedings" from the MCHR. Plaintiff seems to be arguing that the February 28, 2019 letter is tantamount to

6

a right-to-sue letter because it adopts the EEOC's findings. However, this letter is a final decision of the MCHR under § 213.085, not a right-to-sue letter under § 213.111. The letter does not state that Plaintiff has a right to file an employment discrimination claim in court. Instead, it states that the MCHR reviewed the EEOC's investigative report, adopted the EEOC's findings, and terminated the administrative proceedings. It also states that an administrative appeal may be taken to the Circuit Court of Cole County, Missouri. Because Plaintiff did not obtain a right-to-sue letter from the MCHR, her MHRA claims must be dismissed.

V.      **Failure to Exhaust Administrative Remedies**

Comprehensive argues that Plaintiff failed to exhaust administrative remedies on the remaining Title VII race discrimination claim because she checked the box on her administrative charge for discrimination based on "color" but not for "race." Comprehensive cites no authority to support this argument. Based on the Court's independent review of the case law and EEOC guidance, the Court disagrees.

"A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." *Lindeman v. Saint Luke's Hosp. of Kan. City*, 899 F.3d 603, 608 (8th Cir. 2018) (quotation marks and citation omitted). "The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." *Kirklin v. Joshen Paper & Packaging of Ark. Co.*, 911 F.3d 530, 536 (8th Cir. 2018) (quotation marks and citation omitted). Although Title VII does not define "race" or "color," the EEOC compliance manual describes the differences and overlap between the two terms:

> The courts and the Commission read "color" to have its commonly understood meaning—pigmentation, complexion, or skin shade or tone. Thus, color discrimination occurs when a person is discriminated against based on the lightness, darkness, or other color characteristic of the person. Even though race and color clearly overlap, they are not synonymous. Thus, color discrimination can occur between persons of different races or ethnicities, or between persons of the same race or ethnicity.

EEOC Compliance Manual at 15-6 (Apr. 19, 2006), *available at* https://www.eeoc.gov/policy/docs/race-color.pdf; *see also Atkins v. Denso Mfg. Tenn., Inc.*, No. 3:09-CV-520, 2011 WL 5023392, at *9 (E.D. Tenn. Oct. 20, 2011) (quoting the EEOC Compliance Manual). The EEOC Compliance Manual also expressly states that "discrimination

7

based on . . . a person's color" amounts to race discrimination. EEOC Compliance Manual at 15-4. The manual also references the racial categories provided by the Office of Management and Budget—which include "*Black* or African American"—and it expressly uses these two terms "interchangeably." *Id.* at 15-1 n.2, 15-3 (emphasis added).

Here, although Plaintiff checked only the box for discrimination based on color, and not the box for race, the narrative of her EEOC charge form states that she was fired because of her "color (black)." It does not mention her skin tone. *Cf. Howell v. N.C. Cent. Univ.*, No. 1:16CV576, 2017 WL 2861133, at *4-6 (M.D.N.C. July 5, 2017) (no exhaustion when the plaintiff checked only the box for color discrimination and, in the narrative, focused on the lighter hue of his skin as compared to other people of color); *Jones v. Jefferson Par.*, No. CIV.A. 12-2191, 2013 WL 871539, at *5 (E.D. La. Mar. 8, 2013) (same). Accordingly, the Court believes an EEOC investigation into race discrimination reasonably could be expected to result from Plaintiff's charge, and the Court is not persuaded that Plaintiff failed to give Comprehensive adequate notice of a race discrimination claim. *See Kristensen v. Greatbatch*, No. CIV. 11-3318 MJD/TNL, 2012 WL 4479244, at *5 (D. Minn. Sept. 28, 2012) ("The Court concludes that, although Plaintiff did not check the box for color discrimination on her EEOC Charge, that claim is reasonably related to the race discrimination claim asserted by Plaintiff."); *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996) ("[C]ourts should not use Title VII's administrative procedures as a trap for unwary *pro se* civil-rights plaintiffs."). Therefore, Comprehensive's motion will be denied as to Plaintiff's Title VII race discrimination claim.

**Conclusion**

Accordingly, Defendants' motion to dismiss the Amended Complaint (Doc. 28) is **GRANTED in part** and **DENIED in part**. Specifically, the Court **ORDERS** as follows:

1. Plaintiff's claims against Julie Pratt and Antonia Wyatt are **DISMISSED.**
2. Plaintiff's MHRA retaliation and discrimination claims against Comprehensive are **DISMISSED.**
3. Plaintiff's Title VII retaliation claim against Comprehensive is **DISMISSED.**
4. Comprehensive's motion to dismiss Plaintiff's Title VII race discrimination claim against Comprehensive is **DENIED.**
5. Per Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure, Comprehensive's Answer to the Amended Complaint's Title VII race discrimination claim is due within 14 days.

The Court directs the Clerk's office to mail a copy of this Order to Plaintiff.

**IT IS SO ORDERED.**

                                                      s/ Roseann A. Ketchmark
                                                     ROSEANN A. KETCHMARK, JUDGE
                                                     UNITED STATES DISTRICT COURT

DATED: October 21, 2019